1 | Matthew J. Moore (admitted *pro hac vice*)
   | HOWREY LLP
2 | 1299 Pennsylvania Avenue., N.W.
   | Washington, D.C.  20004-2402
3 | Telephone:   (202) 783-0800
   | Fax:             (202) 383.6610
4 | E-mail:        moorem@howrey.com

5 | Ben M. Davidson (SBN 181464)
   | HOWREY LLP
6 | 550 South Hope Street
   | Suite 1100
7 | Los Angeles, California  90071-2627
   | Telephone:   (213) 892-1800
8 | Fax:             (213) 892-2300
   | Email:         davidsonb@howrey.com

9 |
   | Gregory S. Cordrey (SBN 190144)
10| Mark L. Blake (SBN 253511)
   | HOWREY LLP
11| 4 Park Plaza
   | Suite 1700
12| Irvine, CA  92614-8557
   | Telephone:   (949) 721-6900
13| Fax:             (949) 721-6910
   | Email:         cordreyg@howrey.com
14| Email:         blakem@howrey.com



# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| KRUSE TECHNOLOGY PARTNERSHIP, | Case No. CV09-3710 JVS (RNBx) |
| Plaintiff, | Assigned to: |
| v. | Hon. James V. Selna<br>Hon. Robert N. Block, Mag. Judge |
| ISUZU MOTORS LIMITED, ISUZU NORTH AMERICA CORPORATION, and ISUZU COMMERCIAL TRUCK OF AMERICA, INC. | **ANSWER AND COUNTERCLAIMS OF ISUZU COMMERCIAL TRUCK OF AMERICA, INC.** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

1    Defendant Isuzu Commercial Truck of America, Inc. ("ICTA") answers the

2   Complaint for Patent Infringement ("Complaint") of Plaintiff Kruse Technology

3   Partnership, ("KTP"), as follows:

## I.  **THE PARTIES**

5    1.    ICTA is without sufficient knowledge or information to form a belief as to

6   the truth of the allegations contained in Paragraph 1 and on that basis denies each and

7   every such allegation.

8    2.    ICTA admits the allegations in Paragraph 2.

9    3.    ICTA admits the allegations in Paragraph 3.

10    4.    ICTA admits the allegations in Paragraph 4.

11    5.    ICTA admits that it does business in this judicial district and otherwise

12   denies the allegations in Paragraph 5.

## II.  **JURISDICTION AND VENUE**

14    6.    ICTA incorporates the answers provided to paragraphs 1-5 as though fully

15   stated herein.

16    7.    ICTA admits that the Complaint purports to set forth a cause of action

17   under the patent laws of the United States, 35 U.S.C. § 100, et seq., more particularly 35

18   U.S.C. § 271 and § 281.  However, ICTA denies  that KTP has a valid cause of action.

19    8.    ICTA admits that subject matter jurisdiction in this Court is proper under

20   28 U.S.C. § 1338(a).

21    9.    ICTA admits that venue is proper in this District under 28 U.S.C. §§ 1391

22   and 1400(b).

## III.  **FIRST CLAIM FOR RELIEF: PATENT INFRINGEMENT**
## **(U.S. PATENT NO. 5,265,562)**

25    10.    ICTA incorporates the answers provided to paragraphs 1-9 as though fully

26   stated herein.

27    11.    ICTA admits that on its face U.S. Patent No. 5,265,562 ("the '562 patent")

28   attached as Exhibit A to the Complaint is entitled "Internal Combustion Engine With

Limited Temperature Cycle."  ICTA further admits that, on its face, the '562 patent bears an issue date of November 30, 1993, and lists Douglas C. Kruse as inventor. Otherwise, ICTA denies the remaining allegations in Paragraph 11.

12.    ICTA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12, and on that basis, denies those allegations.

13.    ICTA denies the allegations in Paragraph 13.

14.    ICTA denies the allegations in Paragraph 14.

15.    ICTA denies the allegations in Paragraph 15.

16.    ICTA denies the allegations in Paragraph 16.

## IV. <u>SECOND CLAIM FOR RELIEF: PATENT INFRINGEMENT</u>
## <u>(U.S. PATENT NO. 6,058,904)</u>

17.    ICTA incorporates the answers provided to paragraphs 1-16 as though fully stated herein.

18.    ICTA admits that on its face U.S. Patent No. 6,058,904 ("the '904 Patent") attached as Exhibit B to the Complaint is entitled "Internal Combustion Engine With Limited Temperature Cycle."  ICTA further admits that, on its face, the '904 Patent bears an issue date of May 9, 2000, and lists Douglas C. Kruse as inventor.  Otherwise, ICTA denies the remaining allegations in Paragraph 18.

19.    ICTA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19, and on that basis, denies those allegations.

20.    ICTA denies the allegations in Paragraph 20.

21.    ICTA denies the allegations in Paragraph 21.

22.    ICTA denies the allegations in Paragraph 22.

23.    ICTA denies the allegations in Paragraph 23.

## V.   **THIRD CLAIM FOR RELIEF: PATENT INFRINGEMENT**
## **(U.S. PATENT NO. 6,405,704)**

24.    ICTA incorporates the answers provided to paragraphs 1-23 as though fully stated herein.

25.    ICTA admits that on its face U.S. Patent No. 6,405,704 ("the '704 Patent") attached as Exhibit C to the Complaint is entitled "Internal Combustion Engine With Limited Temperature Cycle."  ICTA further admits that, on its face, the '704 Patent bears an issue date of June 18, 2002, and lists Douglas C. Kruse as inventor.  Otherwise, ICTA denies the remaining allegations in Paragraph 25.

26.    ICTA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26, and on that basis, denies those allegations.

27.    ICTA denies the allegations in Paragraph 27.

28.    ICTA denies the allegations in Paragraph 28.

29.    ICTA denies the allegations in Paragraph 29.

30.    ICTA denies the allegations in Paragraph 30.

## **RESPONSE TO PRAYER FOR RELIEF**

ICTA denies that KTP is entitled to any to either the requested relief or any other or further relief.

## **DEFENSES**

ICTA hereby asserts the following defenses without undertaking or otherwise shifting any applicable burdens of proof.  ICTA reserves the right to assert additional defenses, as warranted by facts revealed through investigation and discovery.

## **FIRST AFFIRMATIVE DEFENSE**
## **NON-INFRINGEMENT**

31.    ICTA has not and does not infringe, contribute to the infringement of, or actively induce others to infringe, either directly, indirectly, literally, or by application of the doctrine of equivalents, any valid claim of the '562, '904, or '704 Patents.

1

## SECOND AFFIRMATIVE DEFENSE

2

## INVALIDITY UNDER 35 U.S.C. §§ 101, 102, 103 and 112

3       32.     One or more of the claims of the '562, '904, and '704 Patents are invalid

4   for failure to comply with the conditions for patentability specified in 35 U.S.C. § 101,

5   et seq., including without limitation each of the requirements in 35 U.S.C. §§ 101, 102,

6   103, and 112.

7

## THIRD AFFIRMATIVE DEFENSE

8

## ESTOPPEL

9       33.     KTP's claims for relief are barred by the defense of estoppel.

10

## FOURTH AFFIRMATIVE DEFENSE

11

## LACHES

12      34.     KTP's claims for patent infringement and/or damages are barred by laches,

13  waiver, equitable estoppel, and/or acquiescence.

14

## FIFTH AFFIRMATIVE DEFENSE

15

## PROSECUTION HISTORY ESTOPPEL

16      35.     KTP is estopped from construing the claims of the '562, '904, and '704

17  patents in such a way as may cover activities of ICTA by reason of, *inter alia*,

18  amendments and/or statements made in and to the United States Patent and Trademark

19  Office during the prosecution of the applications that issued as the '562, '904, and '704

20  Patents.

21

## SIXTH AFFIRMATIVE DEFENSE

22

## EQUITABLE ESTOPPEL

23      36.     KTP's claims for infringement of the '562, '904, and '704 Patents and/or

24  damages are barred in whole or part by the doctrine of equitable estoppel.

25

## SEVENTH AFFIRMATIVE DEFENSE

26

## CLAIM SPLITTING

27      37.     KTP is barred from any relief in this action under the doctrine of claim

28  splitting, because, on information and belief, some of KTP's claims in this action may

be identical to the claims KTP makes in the earlier filed litigation, *Kruse Technology Partnership v. General Motors Corporation*, Case No. SACV 08-1452-JVS (RNBx) and in *Kruse Technology Partnership v. General Motors Company*, Case No. CV09-4970-JVS (MLGx).

## EIGHTH AFFIRMATIVE DEFENSE
## PATENT EXHAUSTION

38.    KTP is barred from any relief in this action in whole or in part under the doctrine of patent exhaustion.

## NINTH AFFIRMATIVE DEFENSE
## LIMITATION ON DAMAGES

39.    KTP's claim for relief is statutorily limited by the time limitations on damages specified in 35 U.S.C. § 286.

## TENTH AFFIRMATIVE DEFENSE
## INEQUITABLE CONDUCT AND UNCLEAN HANDS

40.    The '562 Patent, the '904 Patent, and the '704 Patent are unenforceable because of KTP's inequitable conduct and unclean hands in the filing and prosecution of the applications leading to the issuance of these patents.  On information and belief, in the filing and prosecution of these applications, Mr. Douglas C. Kruse ("Mr. Kruse") and his patent attorneys, Louis Mok and Michael Elkind, with an intent to deceive the U.S. Patent and Trademark Office ("PTO") and its Patent Examiners, intentionally withheld and misrepresented information material to the patentability of the claims of those patent applications.

41.    Application serial no. 07/919,916, the application of the '562 Patent, recited claims that required among other things the use of "substantially constant volume" combustion and "substantially isothermal" or "constant temperature" combustion.  Application claim 3, which later issued as claim 5 of the '562 Patent, for example, recited:

ANSWER AND COUNTERCLAIMS OF ISUZU COMMERCIAL TRUCK OF AMERICA, INC.

1      "A spark ignition internal combustion engine including a combustion

2      chamber, said engine having an operating cycle including a heat input

3      phase comprising a substantially constant volume combustion process

4      followed by a substantially isothermal combustion process."

5 Independent claim 1 similarly recited a method and also required, among other

6 things, "wherein the combustion of the fuel/air mixture resulting from the fuel

7 first introduced is a substantially constant volume process; and wherein the

8 combustion as a result of the introduction of the second fraction is a substantially

9 isothermal process." Dependent claim 2 recited the method of claim 1, adding

10 that "the fuel is introduced by direct injection."

11     42.    On December 17, 1992, during the prosecution of the application for

12 the '562 Patent, Patent Examiner Willis Wolfe rejected the application claims

13 based on a prior art patent, U.S. Patent 2,917,031 to Nestorovic ("Nestorovic

14 Patent"). On March 12, 1993, Mr. Kruse's patent attorney, Louis Mok, argued

15 against the examiner's rejection by representing that the Nestorovic Patent did not

16 disclose the required "isothermal" or constant temperature combustion of the

17 claims. Mr. Mok represented that because the Nestorovic Patent disclosed a

18 constant pressure process, it could not have also disclosed a constant temperature

19 process: "It is, of course, thermodynamically impossible to provide a process that

20 is <u>simultaneously</u> constant pressure and isothermal [constant temperature]." The

21 Examiner accepted this representation, concluding that the prior art disclosed to

22 him did not teach constant temperature combustion. He subsequently allowed the

23 claims that issued in the '562 Patent.

24     43.    While the application for the '562 Patent was still pending, Mr.

25 Kruse and his attorney Mr. Mok also filed a substantially-identical application for

26 patent in other countries, including European countries (the "European

27 application"). Claims 1-11 in Mr. Kruse's European application were, at the

28 time, substantially identical to claims pending in the U.S. application for, and

1 later issued in, the '562 Patent, reciting among other things, a combination of

2 "substantially constant volume combustion" and "substantially isothermal

3 combustion."

4     44.   During the prosecution of the European application, the European Patent

5 Office conducted a search of applicable prior art with respect to the substantially

6 identical claims in the European application and issued Mr. Kruse and his attorney

7 Mr. Mok an "International Search Report" on October 15, 1993, before issuance of the

8 '562 Patent. That "Search Report" highlighted, as a "document of particular relevance"

9 to the substantially-identical claims, German prior patent DT 2507142 Al to Porsche

10 ("the Porsche Application"). The Porsche Application was published September 2,

11 1976, and, therefore, was prior art under 35 U.S.C. § 102(b) to all of Mr. Kruse's U.S.

12 applications, as well as to his European application. The Porsche Application, in fact,

13 disclosed the use of "constant volume" and "constant temperature" combustions

14 required by the application claims, including claims 1 and 3, which issued as claims 1

15 and 5 of the '562 Patent. The Porsche Application additionally disclosed the use of

16 direct injection specifically recited by claim 2.  The Porsche Application was therefore

17 material and not cumulative of any other prior art before the examiner, and would have

18 resulted in a rejection of at least application claims 1, 2, and 3 for anticipation.

19     45.   Mr. Kruse and Mr. Mok knew about the Porsche Application and received

20 a copy of the European Patent Office's determination that it was of "particular

21 relevance" to claims that they had filed in the European application that were

22 substantially identical to the claims of Mr. Kruse's application for the '562 Patent.

23 Despite this knowledge, and in violation of their duty of disclosure to the PTO

24 (35 U.S.C. § 56; 37 C.F.R. § 1.56), Mr. Kruse and Mr. Mok failed to disclose the

25 Porsche Application to the PTO during the pendency of the '562 Patent and the U.S.

26 patent issued without consideration by the PTO of the relevant disclosures of the prior

27 art Porsche Application.

28

46.     Moreover, although the Porsche Application itself was later cited to the PTO in connection with Mr. Kruse's subsequent U.S. applications by Mr. Kruse and the attorney who replaced Mr. Mok, Mr. Elkind, Mr. Kruse and Michael Elkind withheld information relevant to the Porsche Application that would have explained the Porsche Application's disclosure.  On information and belief, Mr. Elkind coordinated the prosecution of Mr. Kruse's European application through Mr. Kruse's European attorneys, including Mr. Roger Prutton.  Mr. Kruse and Mr. Elkind failed to inform the U.S. examiners in charge of Mr. Kruse's continuing patent applications that Examiners in the European Patent Office ("EPO") had reviewed the European application and rejected claims substantially identical to those in the '562 Patent based on the Porsche Application.  Moreover, they did not disclose to the U.S. examiners that the European examiners gave detailed technical explanations showing why the Porsche Application disclosed features that were the subject, not only of claims substantially identical to those in the '562 Patent, but also of claims pending in Mr. Kruse's applications for other U.S. patents that Mr. Elkind was prosecuting.  Claim 9 of the '904 Patent, which issued on May 9, 2000, is identical to claim 1 of the '562 Patent except for the additional use of "compressed air."  The claims of the '704 Patent also were sufficiently similar to the claims of the earlier-issued '562 and '904 Patents that Mr. Kruse, through Mr. Elkind, filed a terminal disclaimer to prevent their being rejected for double-patenting in light of the similarity in the claims with the earlier-issued '562 and '904 Patents.

47.     On information and belief, Mr. Kruse and his attorney Mr. Elkind knew of the European Examiners' rejection of the substantially-identical claims in the European application, were aware of the European Examiners' explanation of the subject matter disclosed by the Porsche Application, including the steps of providing (in spark-ignited directly-injected engines) a substantially constant volume combustion process followed by a substantially isothermal (*i.e.*, constant temperature) combustion process, and were aware that such features were common to claims in Mr. Kruse's then-pending U.S. applications.  On information and belief, Mr. Kruse and Mr. Elkind also knew that the

1  European Examiners had provided additional explanations that were material to the
2  claims of the then-pending Kruse applications and to the U.S. patent examiners'
3  understanding of those claims. For example, Examiner Willis Wolfe, who examined
4  and issued the application for the '562 Patent, explained on October 21, 1994 in a co-
5  pending Patent Cooperation Treaty ("PCT") application with substantially identical
6  claims that he had allowed in the '562 Patent, and that were subsequently allowed in the
7  '904 Patent, that the claims were patentable because the prior art that he had reviewed
8  "does not teach or fairly suggest the utilization of a constant volume combustion process
9  followed by a substantially isothermal combustion process in a spark ignited, directly
10  injected internal combustion engine." On December 18, 1996, a European Examiner
11  explained in detail why the Porsche Application disclosed these features: "Accordingly,
12  DE-A-2 507 142 [the Porsche Application] shows a method of operating a spark
13  ignition internal combustion [engine] in which a substantially constant volume
14  combustion process is followed by a substantially isothermal combustion process . . . ."
15  Additionally, on December 9, 1997, three European Examiners explained in a
16  communication to Mr. Kruse and his European attorney that the Porsche Application
17  also disclosed direct injection.

18        48.    On information and belief, Mr. Kruse and his patent attorney Mr. Elkind
19  were also both also aware of Mr. Kruse's admissions to the European Examiners after
20  receiving their technical explanations regarding the disclosure of the Porsche
21  Application. For example, on February 3, 1998, Mr. Kruse compared the disclosure in
22  his application to that of the Porsche Application and ultimately admitted that the
23  Porsche Application disclosed both a constant volume combustion and isothermal
24  combustion. Mr. Kruse, who had earlier stated through his European attorney on
25  August 28, 1995 that "the description of the process in [the Porsche Application] is
26  extremely sketchy and it is extremely difficult to derive any clear teaching from it,"
27  ultimately conceded the correctness of the European Examiners' technical explanations
28  of the Porsche Application, including the use of constant volume combustion, constant

1   temperature combustion, direct injection, and spark ignition, by amending his claims

2   and adding other requirements not required by the claims of his original European

3   application or by the claims of the Kruse '562, '904, or '704 Patents.

4       49.    The European Examiners' decisions on patentability, technical

5   explanations of the Porsche Application, and Mr. Kruse's admissions regarding the

6   disclosure of the Porsche Application, were material to the patentability of the claims in

7   Mr. Kruse's U.S. patent applications.  Mr. Kruse and his attorney Mr. Elkind withheld

8   from the U.S. Examiners knowledge of the European Examiners' decisions and

9   technical explanations of the Porsche Application, thereby preventing the U.S.

10  Examiners from evaluating and agreeing with the European Examiners' assessment of

11  the Porsche Application.  On information and belief, Mr. Kruse and Mr. Elkind withheld

12  this material information, which was not otherwise available to the U.S. examiners from

13  any other source, in order to avoid their use in a rejection of their claims in the U.S.

14  Patent applications leading to, *inter alia*, the '904 and '704 Patents.

15      50.    During the prosecution of the '562 Patent, the '904 Patent, and the '704

16  Patent, Mr. Kruse failed to disclose other prior art known to him, including U.S. Patent

17  No. 4,050,420 issued to Cataldo ("Cataldo Patent"), which was assigned to General

18  Motors and was material to the patentability of the claims submitted for examination.

19  Mr. Kruse did not act in accordance with the duty of good faith and candor imposed on

20  him by the PTO's Patent Rules and did not disclose this prior art in any of his

21  communications with PTO Examiners.  Instead, on information and belief, Mr. Kruse

22  withheld this prior art in order to mislead the Examiners regarding the patentability of

23  the subject matter claimed in Mr. Kruse's applications.  As explained above, during the

24  prosecution of the '562 Patent, Mr. Kruse convinced Examiner Wolfe that the prior art

25  Nestorovic Patent did not disclose constant temperature combustion.  Throughout the

26  prosecution of his patents, however, Mr. Kruse was aware that the Cataldo Patent did

27  disclose the concept of using constant temperature combustion, as well as the use of

28  limiting maximum temperature to reduce NOx, a limitation that Mr. Kruse included in

1 application claim 1 of the application that issued as the '704 Patent.  Mr. Kruse was

2 aware of the Cataldo Patent's teaching of these features and of their significance

3 because he found the reference in a text search of a library database regarding the use of

4 constant temperature combustion.  Mr. Kruse also acknowledged in a draft patent

5 application regarding his use of constant volume and constant temperature combustions

6 that the Cataldo Patent should be a cited reference.  The Cataldo Patent's clear and

7 explicit disclosure of a spark-ignited engine using two-phase combustion in which the

8 second combustion phase was a constant temperature combustion, and in which a

9 limited maximum combustion temperature was used to control NOx, was not

10 cumulative of any other information considered by the U.S. examiners during the

11 pendency of the applications for the '562, '904, and '704 Patents.  If the Cataldo Patent

12 had been cited during the prosecution of the '562 and '904 Patents, the examiners in

13 charge of these applications would have used Cataldo's teaching of constant

14 temperature combustion to at least reject claim 1 of the '562 Patent and claim 9 of the

15 '904 Patent as obvious in light of the Cataldo Patent.  If the Cataldo Patent had been

16 cited during the prosecution of the '704 Patent, the examiner in charge of the application

17 for this patent would have used it to reject at least claim 1 of this patent as unpatentable

18 for failing to disclose any new or non-obvious distinction as compared to Cataldo's

19 teaching of operating an internal combustion engine by injecting fuel so as to limit

20 temperature to reduce NOx.

21     51.    In addition, before applying for the '904 and '704 Patents, Mr. Kruse

22 submitted a technical paper for publication to the Society of Automotive Engineering

23 ("SAE") entitled "Combustion Model for Limited-Temperature Cycle" ("Article").  The

24 Article disclosed technology relating to the subject matter of the '904 and '704 patent

25 applications.  The SAE, after a peer group review, rejected the paper in or about January

26 1996 on a number of grounds and found that it should "not be published for several

27 reasons."  Among other things, the SAE review highlighted a failure of Mr. Kruse to

28 enable his claimed technology.  An SAE reviewer found that "[t]he authors have a

1   simplistic engine cycle simulation program and they have continued to exercise it." The

2   reviewer also stated that it was "basically false advertising" to suggest that the Carnot

3   cycle supported the authors' theory, and that "there is no particular advantage to the

4   constant temperature phase" of the authors' proposed theory.  This statement was

5   inconsistent with assertions of Mr. Kruse to the Patent Office that the Carnot cycle

6   provided increased efficiencies.  The SAE reviewer also noted that the authors did not

7   teach how their theoretical fuel-delivery method would achieve a desired heat release

8   rate:

9           The second flaw in the papers is the tacit assumption that by controlling the fuel

10          injection profile one can get any desired burning profile.  All of the mechanisms

11          that promote or inhibit combustion in current engines are still active in their LTC

12          cycle.  You can not control only fuel delivery and get what you want for heat

13          release rate.  The fuel delivery schedule is only one of several important

14          parameters.

15  The SAE reviewer's criticism of Mr. Kruse's assumption that he could achieve desired

16  burning or heat release profiles by controlling fuel injection profiles was highly relevant

17  to the patentability of each of the claims of the Kruse patents, which rely throughout

18  their disclosures on the same assumption regarding how heat release profiles would be

19  achieved to enable the claimed methods of operating internal combustion engines.  The

20  information also was not cumulative because the type of scientific evaluations provided

21  by the SAE peer reviews regarding Mr. Kruse's theoretical methods for controlling heat

22  release and temperature were not available to the examiners through any other source.

23  Mr. Kruse, moreover, was aware of the importance of a peer review of the claimed

24  methods in his patents, not only because his SAE paper referred to the '562 Patent, but

25  because he knew that his methods were theoretical and had not been tested in an actual

26  prototype to determine whether his proposal for achieving heat release and temperature

27  characteristics were an enabling technology.  Mr. Kruse withheld the results of the peer

28  review from investors and potential investors in his proposed technology as well as from

ANSWER AND COUNTERCLAIMS OF ISUZU COMMERCIAL TRUCK OF AMERICA, INC.

1  the examiners at the PTO. Had Mr. Kruse disclosed the SAE peer review results to the

2  examiners in charge of Mr. Kruse's applications for the '904 and '704 Patents, the

3  information would have been used to reject the claims as unpatentable for lacking an

4  enabling disclosure under 35 U.S.C. § 112.

5          52.    On information and belief, Mr. Kruse did not act in accordance with the

6  duty of good faith and candor imposed on him by 37 C.F.R. § 1.56, but instead withheld

7  this material information from the PTO in order to mislead the Examiners regarding the

8  patentability of the subject matter claimed in his applications.

9          53.    The '562 Patent, the '904 Patent and the '704 Patent are also unenforceable

10  because of other inequitable conduct in the filing and prosecution of the applications

11  leading to the issuance of these patents. On information and belief, in the filing and

12  prosecution of these applications, Mr. Kruse, with an intent to deceive the PTO and its

13  Patent Examiners, intentionally misrepresented information material to the patentability

14  of the claims of those patent applications.

15          54.    Mr. Kruse made representations through his patent attorney to Patent

16  Examiner Willis Wolfe regarding the Nestorovic Patent. On March 12, 1993,

17  Mr. Kruse's patent attorney, Louis Mok, argued against the Patent Examiner's

18  December 17, 1992 rejection of the claims of application serial no. 07/919,916 based on

19  the Nestorovic Patent. Mr. Mok represented that the Nestorovic Patent did not disclose

20  "isothermal" or constant temperature combustion by stating: "It is, of course,

21  thermodynamically impossible to provide a process that is <u>simultaneously</u> constant

22  pressure and isothermal [constant temperature]. What Nestorovic appears to mean is

23  that his constant pressure process is accompanied by a constant <u>flame</u> temperature rather

24  than isothermal heat addition." Mr. Kruse repeated this representation in subsequent

25  communications to PTO Examiners reviewing his related applications.

26          55.    Mr. Kruse, however, knew at all times during the prosecution of his

27  applications that "[i]t is possible thermodynamically for temperature and pressure to

28  remain constant." His knowledge was material information because it refuted and was

1 directly inconsistent with the position he took in opposing the argument of

2 unpatentability relied on by the Patent Examiner. On information and belief, Mr. Kruse

3 violated his duty of disclosure by misrepresenting to the Examiner, through his patent

4 attorney, that it is "thermodynamically impossible to provide a process that is

5 simultaneously constant pressure and isothermal." In his December 7, 2005 deposition

6 in the Caterpillar case, Mr. Kruse's patent attorney, Mr. Mok, testified that the

7 information he provided to the Examiner was important and that if he had been

8 informed by Mr. Kruse that the information was inaccurate, he would have filed a

9 supplemental paper to correct the representation. Had Mr. Kruse not misrepresented to

10 the Examiner that it was "thermodynamically impossible" for Nestorovic to disclose

11 constant temperature combustion, Examiner Wolfe would have maintained his rejection

12 of the claims of the '562 Patent. Neither that patent nor the '904 and '704 Patents,

13 which were allowed subsequently after the filing of terminal disclaimers, would have

14 issued.

15    56.    On information and belief, Mr. Kruse did not act in accordance with the

16 duty of good faith and candor imposed on him by 37 C.F.R. § 1.56, but instead

17 misrepresented this material information in order to mislead the Examiners regarding

18 the patentability of the subject matter claimed in his applications.

19                              **COUNTERCLAIMS**

20    Isuzu Commercial Truck of America, Inc. ("ICTA") brings these counterclaims to

21 obtain a declaratory judgment that: (i) it has not and does not infringe any valid claim

22 of the '562 Patent, the '904 Patent, or the '704 Patent (collectively "the patents-in-

23 suit"); (ii) the patents-in-suit are invalid; and (iii) the patents-in-suit are unenforceable.

24                           **I.  THE PARTIES**

25    1.    Defendant/Counter-Plaintiff ICTA is a California Corporation with its

26 principal place of business at 13340 183rd Street, Cerritos, California 90703-8748.

27    2.    Upon information and belief, Plaintiff/Counter-Defendant Kruse

28 Technology Partnership ("KTP") is a California Limited Partnership located at 1121 N.

ANSWER AND COUNTERCLAIMS OF ISUZU COMMERCIAL TRUCK OF AMERICA, INC.

1  Cosby Way, Suite G, Anaheim, California 92806.

## II. JURISDICTION AND VENUE

3.     This action arises under the patent laws of the United States, Title 35, United States Code.  This Court has jurisdiction over the subject matter of this counterclaim under 28 U.S.C. §§ 2201, 2202, 1331, 1338(a) and 1367(a).

4.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400.

## III. FIRST COUNTERCLAIM

## Declaratory Judgment of Non-Infringement of U.S. Patent No. 5,265,562

5.     ICTA realleges and incorporates the allegations contained in paragraphs 1 through 4.

6.     KTP alleges in its Complaint that it is the owner of the '562 Patent, entitled "Internal Combustion Engine With Limited Temperature Cycle," which bears an issue date of November 30, 1993.

7.     KTP has sued ICTA in the present action, alleging infringement of the '562 Patent.  Thus, an immediate, real, and justiciable controversy exists between ICTA, on the one hand, and KTP, on the other hand, with respect to the alleged infringement of the '562 Patent.

8.     ICTA does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any claim of the '562 Patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

9.     ICTA requests declaratory judgment that it does not infringe, directly or indirectly, any claim of the '562 Patent.

## IV. SECOND COUNTERCLAIM

## Declaratory Judgment of Invalidity of U.S. Patent No. 5,265,562

10.    ICTA realleges and incorporate the allegations contained in paragraphs 1 through 9.

11.    An immediate, real, and justiciable controversy exists between ICTA, on

1  the one hand, and KTP, on the other hand, with respect to the invalidity of the '562

2  Patent.

3      12.   Each asserted claim of the '562 Patent is invalid and/or unenforceable for

4  failure to comply with one or more provisions of Title 35, United States Code, including

5  but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

6      13.   ICTA requests declaratory judgment that each asserted claim of the '562

7  Patent is invalid and unenforceable.

### V.  THIRD COUNTERCLAIM

**Declaratory Judgment of Non-Infringement of U.S. Patent No. 6,058,904**

10     14.   ICTA realleges and incorporate the allegations contained in paragraphs 1

11 through 13.

12     15.   KTP alleges in its Complaint that it is the owner of the '904 Patent, entitled

13 "Internal Combustion Engine With Limited Temperature Cycle," which bears an issue

14 date of May 9, 2000.

15     16.   KTP has sued ICTA in the present action, alleging infringement of the '904

16 Patent.  Thus, an immediate, real, and justiciable controversy exists between ICTA, on

17 the one hand, and KTP, on the other hand, with respect to the alleged infringement of

18 the '904 Patent.

19     17.   ICTA does not infringe, have not infringed, and do not and have not

20 induced infringement or contributed to infringement of any claim of the '904 Patent

21 under any theory, including literal infringement and infringement under the doctrine of

22 equivalents.

23     18.   ICTA requests declaratory judgment that it does not infringe, directly or

24 indirectly, any claim of the '904 Patent.

### VI. FOURTH COUNTERCLAIM

**Declaratory Judgment of Invalidity of U.S. Patent No. 6,058,904**

27     19.   ICTA realleges and incorporate the allegations contained in paragraphs 1

28 through 18.

17

ANSWER AND COUNTERCLAIMS OF ISUZU COMMERCIAL TRUCK OF AMERICA, INC.

20. An immediate, real, and justiciable controversy exists between ICTA, on the one hand, and KTP, on the other hand, with respect to the invalidity of the '904 Patent.

21. Each asserted claim of the '904 Patent is invalid and/or unenforceable for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

22. ICTA requests declaratory judgment that each asserted claim of the '904 Patent is invalid and unenforceable.

## VII. FIFTH COUNTERCLAIM

### Declaratory Judgment of Non-Infringement of U.S. Patent No. 6,405,704

23. ICTA realleges and incorporates the allegations contained in paragraphs 1 through 22.

24. KTP alleges in its Complaint that it is the owner of the '704 Patent, entitled "Internal Combustion Engine With Limited Temperature Cycle," which bears an issue date of June 18, 2002.

25. KTP has sued ICTA in the present action, alleging infringement of the '704 Patent. Thus, an immediate, real, and justiciable controversy exists between ICTA and KTP with respect to the alleged infringement of the '704 Patent.

26. ICTA does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any claim of the '704 Patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

27. ICTA requests declaratory judgment that it does not infringe, directly or indirectly, any claim of the '704 Patent.

## VIII. SIXTH COUNTERCLAIM

### Declaratory Judgment of Invalidity of U.S. Patent No. 6,405,704

28. ICTA realleges and incorporate the allegations contained in paragraphs 1 through 27.

1    29.    An immediate, real, and justiciable controversy exists between ICTA, on

2 the one hand, and KTP, on the other, with respect to the invalidity of the '704 Patent.

3    30.    Each asserted claim of the '704 Patent is invalid and/or unenforceable for

4 failure to comply with one or more provisions of Title 35, United States Code, including

5 but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

6    31.    ICTA requests declaratory judgment that each asserted claim of the '704

7 Patent is invalid and unenforceable.

8                    ## IX. SEVENTH COUNTERCLAIM

9    **Declaratory Judgment of Unenforceability of The '562, '904, and '704 Patents**

10    32.    ICTA realleges and incorporate the allegations contained in paragraphs 1

11 through 31 and each of the allegations in the Tenth Affirmative Defense (Inequitable

12 Conduct and Unclean Hands).

13    33.    On information and belief, Mr. Kruse and his representatives did not act in

14 accordance with the duty of good faith and candor imposed on them by 37 C.F.R.

15 § 1.56, but instead withheld and misrepresented material information in order to mislead

16 the Examiners regarding the patentability of the subject matter claimed in Mr. Kruse's

17 applications.

18    34.    ICTA requests declaratory judgment that the '562, '904, and '704 Patents

19 are unenforceable.

20

21                        **PRAYER FOR RELIEF**

22    WHEREFORE, ICTA respectfully requests that this Court:

23    A.    dismiss with prejudice the Complaint and each and every count and claim

24 for relief contained therein;

25    B.    determine and declare that the claims of the '562, '904, and '704 Patents

26 are not infringed by ICTA;

27    C.    determine and declare that one or more claims of the '562, '904, and '704

28 Patents are invalid;

ANSWER AND COUNTERCLAIMS OF ISUZU COMMERCIAL TRUCK OF AMERICA, INC.

1    D.    determine and declare that the '562, '904, and '704 Patents are

2  unenforceable;

3    E.    order that this case is exceptional pursuant to 35 U.S.C. § 285, and award

4  ICTA reasonable attorneys' fees incurred in this action;

5    F.    award ICTA costs incurred in this action; and,

6    G.    grant such other and further relief as the Court deems just and proper.

7

8                                      Respectfully submitted,

9
   DATED:                              HOWREY LLP
10

11

12  By _____
                                      Matthew J. Moore
13                                    Ben M. Davidson
                                      Gregory S. Cordrey
14                                    Mark L. Blake

15                                    Attorneys for Defendant
                                      ISUZU COMMERCIAL TRUCK OF
16                                    AMERICA, INC.

17

18

19

20

21

22

23

24

25

26

27

28

ANSWER AND COUNTERCLAIMS OF ISUZU COMMERCIAL TRUCK OF AMERICA, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b) and L.R. 38-1, Defendant/ Counter-Plaintiff Isuzu Commercial Truck of America, Inc. demands a trial by jury of all issues that are triable by right to a jury.

Respectfully submitted,

DATED:                                          HOWREY LLP


By _____
    Matthew Moore
    Ben M. Davidson
    Gregory S. Cordrey
    Mark L. Blake

Attorneys for Defendant
ISUZU COMMERCIAL TRUCK OF
AMERICA, INC.

ANSWER AND COUNTERCLAIMS OF ISUZU COMMERCIAL TRUCK OF AMERICA, INC.

# PROOF OF SERVICE

STATE OF CALIFORNIA ) 
) ss
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 550 South Hope Street, 11th Floor, Los Angeles, California 90071.

I am readily familiar with the firm's business practice of collection and processing correspondence for mailing with the U.S. Postal Service. Under said practice, correspondence is deposited with the U.S. Postal Service in the ordinary course of business on that same day with postage thereon fully prepaid. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this declaration.

On September 30, 2009, I served the foregoing document described as: **ANSWER AND COUNTERCLAIMS OF ISUZU COMMERCIAL TRUCK OF AMERICA, INC.** by having placed a true copy thereof in a sealed envelope addressed as follows:

> Jon W. Gurka, Esq.
> John B. Sganga, Jr., Esq.
> David G Jankowski, Esq.
> Karen V Weil, Esq.
> Knobbe Martens Olson and Bear LLP
> 2040 Main Street 14th Floor
> Irvine , CA  92614

I deposited such envelope with postage thereon prepaid with the United States Postal Service at 550 South Hope Street, 11th Floor, Los Angeles, California.

I am employed in the office of a member of the bar at whose direction service was effected.

Executed on September 30, 2009, at Los Angeles, California.

_Charles Koster_____
Type or Print Name

_Charles Koster_____